UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| INDIANA FARM BUREAU INSURANCE AS SUBROGEE OF KAREN J. TERRY AND ARCHIE TERRY,<br><br>                Plaintiff,<br><br>          v.<br><br>SHENZHEN ANET TECHNOLOGY CO., LTD., CNMODLE, INC., CNMODLE, and WAL-MART.COM USA, LLC,<br><br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 4:19-cv-00168-TWP-DML<br>)<br>)<br>)<br>)<br>)<br>) |

**ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendant Wal-Mart.com USA, LLC ("Wal-Mart.com") (Filing No. 53). In this case, Plaintiff Indiana Farm Bureau Insurance ("Farm Bureau"), as subrogee of its insureds Karen J. Terry and Archie Terry (the "Terrys"), sued Wal-Mart.com and the other defendants--Shenzhen Anet Technology Co., Ltd. ("Anet"), CNMODLE, Inc., and CNMODLE--under theories of product liability, implied warranty of merchantability, and negligence (Filing No. 1). For the following reasons, the Court **grants** Wal-Mart.com's Motion.

## I.    BACKGROUND

Wal-Mart.com provides a marketplace website, where approved third-party sellers offer their products for sale to retail customers, including those in Indiana. (Filing No. 55-1 at 1.) Before these vendors can sell goods on the site, they go through an application process, which includes Wal-Mart.com vetting to confirm their identity and assess their financial risk and online reputation. (Filing No. 55-2 at 3.) After vendors are approved through this procedure to sell on the site, they

provide product details, descriptions, images, and so on for their listings. *Id.* On a product's listing page, a disclaimer informs customers that the vendor provided this information (and that Wal-Mart.com has not verified it) and that the vendor is selling and shipping the product. *Id.* As for customer service, Wal-Mart.com, while sometimes now accepting returns on behalf of vendors in its physical stores, largely requires third-party vendors to handle all cancellations, returns, refunds, and customer service adjustments. *Id.* at 8–9. For providing this marketplace environment for vendors, Wal-Mart.com receives a referral fee. *Id.* at 6–7.

On this marketplace in July 2017, the Terrys purchased from Defendant CNMODLE a 3D printer manufactured by China based Defendant Anet. *Id.* at 2, 10; Filing No. 63-2 at 1. Wal-Mart.com's website, consistent with the practice outlined above, did not provide product content details, description, images, or any other information about the 3D printer—that information was furnished by CNMODLE, who which also stored and shipped the product to the Terrys. (Filing No. 55-2 at 3, 7–8.) As usual, this information was disclosed on the product listing page. *See id.* Specifically, the order Confirmation indicates the 3D printer is "Sold by CNMODLE, Inc.— contact this seller." (Filing No. 63-2 at 1.) Unfortunately, a few months after receipt, the 3D printer caught fire and caused significant damage to real and personal property owned by the Terrys. (Filing No. 55-1 at 2–3.)

Farm Bureau, as the Terrys' insurer, paid the Terrys for their loss under their homeowners insurance policy, but now subrogates the Defendants for the damages. *Id.* at 4. Specifically, Farm Bureau's Complaint includes claims under the Indiana Product Liability Act ("IPLA") for breach of the implied warranty of merchantability under Indiana Code § 26-1-2-314, and for various negligence allegations related to the marketing, promotion, advertisement, distribution, and sale

of the 3D printer. (Filing No. 1.) As the only one of the four Defendants to be successfully served and to appear, Wal-Mart.com has moved for summary judgment on all claims. (Filing No. 53.)

## II. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits

of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III. DISCUSSION

In its summary judgment brief, Wal-Mart.com argues (1) that it "is neither a seller or manufacturer of the allegedly defective product such that Plaintiff can recover against it" under IPLA, (2) that it cannot be held liable for any warranty or negligence claims when IPLA subsumes those claims, and (3) that, even if the warranty claim proceeds independently, it still fails. (Filing No. 54.) The Court held oral argument on the matter on December 21, 2020, focusing primarily on the

> seminal question of law regarding the evolving issue of whether the operator of an online marketplace for allegedly defective products sold by third-party sellers can be designated as a "seller" or "manufacturer" under Indiana law so as to be potentially liable for alleged injuries and/or damages caused by such products.

(Filing No. 77 at 1.) Though this topic comprised the core of the argument, all parts of Wal-Mart.com's summary judgment arguments were discussed, and the Court will address each in turn.

#### A. Count I: Product Liability

IPLA governs all actions brought by a user or consumer against a seller or manufacturer for the physical harm caused by a product. Ind. Code § 34–20–2, *et. al*. Farm Bureau, in its Complaint, purports that Wal-Mart.com is both a "seller" and a "manufacturer" of the 3D printer under IPLA (*see* Filing No. 1 at 6).

Wal-Mart.com begins its summary judgment brief by arguing that it is not a seller under IPLA. (Filing No. 54 at 7.) Wal-Mart.com notes that it "never purchased, possessed, took title,

4

shipped, or distributed the 3D printer kit." *Id.* at 10. All these facts were disclosed to the Terrys at the time of purchase, and Wal-Mart.com's role, it argues, "was limited to providing a website platform for CNMODLE to display the 3D printer kit for sale." *Id.* To support this contention, Wal-Mart.com draws a parallel to a case where the Indiana Supreme Court held, under IPLA, that a clothing company was not a "seller" of umbrellas when it licensed its name to be used on the products but did not order, receive, possess, manufacture, supply, distribute, assemble, design, or sell them. *Id.* (citing *Kennedy*, 806 N.E.2d 776). Wal-Mart.com proceeds to analogize two cases to demonstrate "[t]he growing consensus of federal Circuit Courts around the country is that product liability claims against defendants like Wal-Mart.com that create online marketplace platforms for products sold by third-party sellers to consumers cannot be sustained." *Id.* (citing *Fox v. Amazon.com, Inc.*, 930 F.3d 415 (6th Cir. 2019) (holding that Amazon did not exert sufficient control to be considered a "seller" under Tennessee law); *Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135 (4th Cir. 2019) (holding that Amazon was not a seller under the traditional definition of one who transfers ownership of a property for a price and that simply providing a marketplace website for use by other sellers and facilitating their sales was not sufficient to make it a seller)); *see also* Filing No. 54 at 14 n.2 (collecting non-Circuit cases). Like Amazon in these Circuit Court cases,

> Wal-Mart.com obtained payment for the 3D printer kit and remitted the payment to third-party seller CNMODLE. Wal-Mart.com, like Amazon.com in these cases, did not make any representations about the 3D printer kit, provide content for the product page, or play any role in the design or manufacture of the product at issue. CNMODLE, like the third-party sellers in *Fox* and *Erie*, set the price for the 3D printer kit, not Wal-Mart.com. And, like Amazon.com in *Fox* and *Erie*, here Wal-Mart.com put on its webpage and the order Confirmation received by the Terrys that the 3D printer kit was being sold by CNMODLE.

(Filing No. 54 at 13–14.) Moreover, Wal-Mart.com was never involved "in the storage, packaging and shipping of the products," making it "even less integrally involved in the marketplace product

5

sales" than Amazon. *Id.* at 14. Consequentially, "Wal-Mart.com, as a creator of an online marketplace website for products sold by third-party vendors, is not a seller of the subject 3D printer kit as defined by the IPLA." *Id.* at 14–15.

In response, Farm Bureau argues not only is Wal-Mart.com a seller under IPLA, but it is also a "manufacturer" pursuant to the statute's "domestic distributor exception". Ordinarily under IPLA, "[a]ctions for strict liability in tort are restricted to *manufacturers* of defective products." *Kennedy v. Guess, Inc.*, 806 N.E.2d 776, 780 (Ind. 2004) (emphasis in original). But IPLA renders a seller or distributor the "manufacturer" of a product if (1) the seller or distributor is the manufacturer's "principal" distributor or seller, and (2) the Court cannot "hold jurisdiction" over the true manufacturer. Ind. Code § 34-20-2-4; *Kennedy*, 806 N.E.2d at 781. The Indiana General Assembly designed this exception "to provide a remedy for Indiana consumers who are injured by defective products manufactured by an overseas entity over which Indiana courts have no jurisdiction." *Kennedy*, 806 N.E.2d at 782.

Wal-Mart.com asserts in its summary judgment brief that it is not a "manufacturer" of the 3D printer under IPLA. ([Filing No. 54 at 15](#).) Wal-Mart.com emphasizes that "[t]here is no allegation from the Plaintiff in this matter, nor any evidence, that Wal-Mart.com designed, assembled, produced, or constructed the 3D printer kit at issue." *Id.* It asserts that because there is no contention that it is a traditional "manufacturer," Farm Bureau must prove the elements of the "domestic distributor" exception. *Id.* at 16. "First," it asserts, "Wal-Mart.com is not a seller of the 3D printer kit in question nor is there any evidence that they are a distributor of the 3D printer kit." *Id.* "This alone is fatal to Plaintiff's attempts to invoke the domestic distributor exception." *Id.* Next, Wal-Mart.com argues "there is no evidence that this Court cannot hold jurisdiction over" the actual manufacturer, Anet. *Id.* Indeed, Anet "is subject to The Convention on the Service Abroad

6

of Judicial and Extrajudicial Documents in Civil or Commercial Matters ('Hague Service Convention'), and as such could be served in this matter." *Id.*

In response, Farm Bureau urges that "Wal-Mart.com is a Manufacturer pursuant to the IPLA." ([Filing No. 62 at 9](#).) Farm Bureau argues, there "is a genuine issue of material fact whether Wal-Mart.com is a principal distributor or seller under IPLA" when it has "provided no designated evidence to support its statement it is not a principal seller or distributor." *Id.* at 10, 12. In contrast, Farm Bureau argues it has demonstrated that

> 1. Wal-Mart.com profits from sales; 2. Wal-Mart.com processes payments; 3. Wal-Mart processes Walmart.com returns; 4. Wal-Mart.com controls format and terms of sale; 5. Wal-Mart.com uses the Wal-Mart name and logo to attract Wal-Mart customers to Walmart.com; 6. Wal-Mart.com provides customer service and satisfaction guarantee; and 7. Wal-Mart.com offers at least 206 different Anet products for sale.

*Id.* at 12–13; *see id.* at 13–17 (detailing these assertions). Through all these actions, "Wal-Mart.com played an integral role in selling and distributing and marketing the 3D printer, placing it in the stream of commerce." *Id.* at 17–18. As for jurisdiction over Anet, instead of focusing on service of process, Farm Bureau argues that the Court should focus "on evaluating whether or not a party's contacts with Indiana 'are so frequent and systematic that it could be said that it purposefully availed itself of the privilege of conducting activities within [Indiana].'" *Id.* at 18 (quoting *Parks v. Freud America, Inc.*, 2:14-cv-00036-LJM-WGH, at *4 (N.D. Ind. January 22, 2016)). On top of "Farm Bureau's [failed] attempts at service of process on manufacturer" Anet, Farm Bureau argues that it "has no way to force [Anet] or CNMODLE to participate in this litigation or pay any judgment against them." *Id.* at 19. Finally, Farm Bureau concludes that "Courts across the country . . . have ruled online retailers can be held liable for offering defective products by third party sellers," pointing specifically to (1) *Bolger v. Amazon.com, LLC*, 267 Cal. Rptr. 3d 601 (Cal. Ct. App. 2020) (holding that under its "fulfillment by Amazon" program,

7

Amazon "is an 'integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products'"), and (2) *State Farm Fire and Casualty Company v. Amazon.com, Inc.*, 390 F.Supp.3d 964 (W.D. Wisc. 2019) (holding, under Wisconsin's products liability statute, that "Amazon bears responsibility for putting the defective product into the stream of commerce in Wisconsin, and Amazon is well positioned to allocate among itself and its third-party sellers the risks that products sold on Amazon.com would be defective"). *Id.* at 19–24.

In reply, Wal-Mart.com argues that it "presented undisputed evidence that products sold by third-party sellers through its marketplace website are plainly indicated to potential and actual purchasers . . . as being sold and shipped by third-party sellers." (Filing No. 76 at 2.) In fact, this evidence "establishes that it never sold, took possession of, packaged, or shipped the subject 3D printer kit nor did Wal-Mart.com ever have title to it." *Id.* As for the information provided by Farm Bureau about Wal-Mart.com's business model, it notes that it

> has never denied that it runs a marketplace website providing a platform for product sellers to display content for sale to potential customers, that it helps to facilitate these sales through processing of payments, that it provides customer service to users of the website, that it presently, since 2019 processes returns for third party sellers, or that Wal-Mart.com receives a referral fee when a customer purchases an item from a marketplace seller.

*Id.* at 3. But these facts, Wal-Mart.com argues, are "immaterial" to answering whether it is the "principal distributor or seller or the 3D printer in question." *Id.* As for the federal case Farm Bureau attempts to analogize, the Western District of Wisconsin case involved the "Fulfillment by Amazon" program, where Amazon stored and shipped the product for the third-party vendor. *Id.* at 3–4; *see State Farm*, 390 F.Supp 3d 964. Moreover, "the only federal Circuit Courts to consider the question of the liability of an online marketplace for products sold by third-parties . . . ruled in favor of providers of online marketplaces, finding them not liable for products sold by third-party

sellers." *Id.* at 4 (citing *Fox*, 930 F.3d 415; *Erie*, 925 F.3d 135). And any evidence of how many Anet products are currently listed on Wal-Mart.com is irrelevant when that has no bearing on whether the site is the "principal distributor" of its goods now, let alone when the 3D printer was purchased in 2017. *Id.* at 5. Overall, "Wal-Mart.com merely provided an online marketplace for sellers . . . to offer wares for sale by connecting sellers with purchasers, much like a shopping mall." *Id.* Finally, Farm Bureau has not shown that the Court cannot hold jurisdiction over Anet when there is no evidence "showing the address where service was attempted, if the documents were properly translated into Chinese, or any other documentation demonstrating that service was attempted in accordance with the Ha[gu]e Service Convention." *Id.* at 6. "As to CNMODLE," Wal-Mart.com points to designated evidence that Farm Bureau attempted service at an outdated Colorado address. *Id.* at 6–7. Wal-Mart.com concludes that, although Farm Bureau forwarded that a "contacts" test is proper to determine jurisdiction, it "has made no attempt to meet it." *Id.* at 7. Because Farm Bureau has failed to provide any evidence that Anet's "or CNMODLE's contacts with Indiana are not so infrequent and systematic such that this Court could not hold jurisdiction," it has not carried its burden of proof. *Id.* at 7–8; *see Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996) ("If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party.").

In its surreply, Farm Bureau focuses solely on the jurisdiction prong of the domestic distributor exception of IPLA because "Wal-Mart.com submitted new evidence – citations to the Colorado Secretary of State website and Anet website," which concerns this issue (Filing No. 78 at 1). Farm Bureau starts by noting that, under IPLA, it "must only establish the court is unable to hold jurisdiction over the manufacturer of the product, Anet." *Id.* at 2. After comprehensively

9

detailing its lack of success in serving Anet, CNMODLE, and CNMODLE, Inc., *id.* at 2–4, Farm Bureau notes that Anet's "physical presence" in the United States is non-existent, as a search of the address it lists on its website returns no results for the company, and indeed shows other businesses located there. *Id.* at 4. This makes Wal-Mart.com, consistent with the purpose of IPLA, "the only entity in a position to protect the consumer." *Id.*

The designated evidence and case law support Wal-Mart.com's Motion. Under IPLA's domestic distributor exception, to impose strict liability "on a non-manufacturer, the claimant must [ ] demonstrate that the defendant is a 'principal distributor or seller.'" *Kennedy*, 806 N.E.2d at 782. "Principal," as used in the statute, means "chief; leading; most important or considerable; primary; original." *Id.* (citing Black's Law Dictionary 1210 (7th Edition 1999)). A "distributor" is "any individual, partnership, corporation, association, or other legal relationship which stands between the manufacturer and the retail seller in purchases, consignments, or contracts for sale of consumer goods; a wholesaler." *Id.* (quoting Black's Law Dictionary 475–76 (6th Edition 1990)). A "seller" under IPLA, is "'a person engaged in the business of selling or leasing a product for resale, use or consumption.'" *Id.* (quoting Ind. Code § 34-6-2-136).

In *Kennedy*, the Indiana Supreme Court determined, using these definitions, whether two distinct entities were deemed "manufacturers" under IPLA's domestic distributor exception. The facts of that case are relatively straightforward: Guess, Inc. ("Guess") licensed with Callanen International, Inc. ("Callanen") for its logo to be used on an umbrella manufactured by Hong Kong-based Interasia Bag Manufacturers, Ltd. ("Interasia Bag"). *Id.* at 779. When one of these umbrellas injured a customer's husband, the couple sued all three companies for strict liability and negligence. *Id.* On review of an order granting summary judgment for Callanen and Guess, the

Supreme Court was tasked with resolving, among other things, whether the two were "principal distributors or sellers" of Korean based manufacturer Interasia Bag's umbrella. *Id.* at 782–83.

The *Kennedy* court first considered Callanen: in the year the consumer received the subject umbrella, Callanen "purchased more than 93,000 umbrellas from Interasia Bag," valued at over $60,000.00. *Id.* at 783. Additionally — in the months surrounding customer receipt of the umbrella — "Callanen purchased other items from Interasia Bag, such as rafts, binders, bags, umbrellas, agendas and coolers. The value of items Callanen bought from Interasia Bag during this six-month period was about $235,000." *Id.* All told, "the documented purchases [ ] totaled nearly $617,000." *Id.* The court ultimately concluded that "[t]he volume of business established from the above evidence sufficiently establishes a genuine issue of material fact as to whether Callanen is a 'principal distributor.'" *Id.* But not so for Guess:

> Guess is not a distributor or seller of *any* sort, principal or otherwise. Guess neither ordered nor received the umbrellas at issue. It was never in possession of any of the umbrellas nor did it manufacture, supply, distribute, assemble, design, or sell them. Rather, Guess simply licensed its name to Callanen for placement on various products.

*Id.* (emphasis in original).

In support of their domestic distributer exception position, Farm Bureau argued at the hearing that the text of the Indiana Code does not say that the seller or distributor has to be the principal seller or distributor, just that it has to be "a" principal seller or distributor. They further argued that Wal-Mart.com profits from sales, processes returns, provides customer service and satisfaction guarantee, and has at least 206 different Anet products being offered on its website.

The Court determines, that like Guess, Wal-Mart.com "is not a distributor or seller of *any* sort, principal or otherwise." *Id.* Farm Bureau fails in its attempts to draw Wal-Mart.com nearer to the position of Callanen than Guess. First, even if "Wal-Mart.com profits from sales" by

11

"collect[ing] a fee of 15% of the gross sales price of the 3D printer", (Filing No. 62 at 13), Guess too profited from the licensing agreement permitting its familiar logo to be used on the umbrella at issue in *Kennedy*. *See* 806 N.E.2d at 783 ("Callanen and Guess had a trademark licensing agreement which gave Callanen the right to distribute products bearing the Guess name."). Just like Wal-Mart.com purportedly "uses the Wal-Mart name and logo to attract Wal-Mart customers to Walmart.com", (Filing No. 62 at 15–16), "Guess simply licensed its name to Callanen for placement on various products." *Kennedy*, 806 N.E.2d. at 783.

Second, though Wal-Mart.com may have had "at least 206 different Anet products for sale" at the time of Farm Bureau's August 2020 search of the site, (Filing No. 62 at 17–18; Filing No. 63-6; Filing No. 63-4 at 3), no evidence shows any "volume of business" demonstrating mass acquisitions of Anet products by Wal-Mart.com around the time the Terrys purchased the 3D printer in 2017. Indeed, Wal-Mart.com, like Guess, "neither ordered nor received the [3D printers] at issue." *Kennedy*, 806 N.E.2d. at 783; *see* Filing No. 63-10 at 1.

Next, even accepting that it "processes" payments and returns, "controls format and terms of sale," and "provides customer service and satisfaction guarantee" for third-party vendors on its marketplace site, (Filing No. 62 at 13–16), Wal-Mart.com, again like Guess, "was never in possession of any of [Anet's 3D printers] nor did it manufacture, supply, distribute, assemble, design, or sell them." *Id.* Simply put, under *Kennedy*'s framework, Wal-Mart.com was not a seller under IPLA, and cannot be considered a manufacturer under the even higher demands of the domestic distributer exception.

Myriad burgeoning federal and state court cases agree that an online marketplace operator is not a "seller" of a third-party vendor's products—especially, as here, when that operator does not "fulfill" the order. *See State Farm Fire & Cas. Co. v. Amazon.com, Inc.*, 2020 WL 6746745

(9th Cir. Nov. 17, 2020) (holding that even when "Amazon provides a website for third-party sellers, facilitates sales[, and fulfills orders] for those sellers, it is not a 'seller' under Arizona's strict liability law for the third-party hoverboard sales at issue here"); *Fox v. Amazon.com, Inc.*, 930 F.3d 415 (6th Cir. 2019) (holding, under Tennessee law, that "we are not convinced, on the record before us, that [Amazon, not participating in its fulfillment program,] exercised sufficient control over Plaintiff Megan Fox's hoverboard to be deemed a 'seller' of the hoverboard under the TPLA"); *Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135 (4th Cir. 2019) (holding, under Maryland law, that when Amazon "provides a website for use by other sellers of products and facilitates those sales under its fulfillment program, it is not a seller, and it does not have the liability of a seller"); *Garber v. Amazon.com, Inc.*, 380 F. Supp. 3d 766 (N.D. Ill. 2019) (predicting, in a case where Amazon did not fulfill an order, "that the Illinois Supreme Court would find that Amazon was not a 'seller' of the hoverboard"); *Allstate New Jersey Ins. Co. v. Amazon.com, Inc.*, 2018 WL 3546197 (D.N.J. July 24, 2018) (holding, under New Jersey law, that while Amazon, even when fulfilling an order, "may have technically been a part of the chain of distribution, [ ] it never exercised control over the product sufficient to make it a 'product seller' under the PLA"); *Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393 (S.D.N.Y. 2018) (holding, under New York law, that, "to the extent that the New York Court of Appeals would consider the laws and judicial opinions of other jurisdictions, it would encounter an emerging consensus against construing Amazon as a 'seller' or 'distributor'—and, therefore, against holding Amazon strictly liable for defective products sold on its website," even when Amazon fulfilled an order); *Stiner v. Amazon.com, Inc.*, 2020 WL 5822477 (Ohio Oct. 1, 2020) (holding, under Ohio law, that "Amazon's role in the chain of distribution," when it did not fulfill an order, "is not sufficient to trigger the imposition of strict liability for defective products sold by third-party vendors on its marketplace"). *Cf. McMillan v. Amazon.com,*

*Inc.*, 2020 WL 7417454 (5th Cir. Dec. 18, 2020) (asking a state supreme court, "[u]nder Texas products-liability law, is Amazon a 'seller' of third-party products sold on Amazon's website when Amazon does not hold title to the product but controls the process of the transaction and delivery through Amazon's Fulfillment by Amazon program?"); *State Farm*, 390 F. Supp. 3d 964 (holding, under Wisconsin law, that "[a]t least for products sold under Amazon's [Fulfillment by Amazon] program, Amazon otherwise serves all the traditional functions of both retail seller and wholesale distributor. . . . Amazon bears responsibility for putting the defective product into the stream of commerce in Wisconsin, and Amazon is well positioned to allocate among itself and its third-party sellers the risks that products sold on Amazon.com would be defective"); *Bolger*, 267 Cal. Rptr. 3d 601 (holding, under California law, that Amazon, under its "fulfillment by Amazon" program, "is an 'integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products'"). *But cf. Oberdorf v. Amazon.com Inc.*, 818 F. App'x 138 (3d Cir. 2020) (en banc) (asking a state supreme court, "[u]nder Pennsylvania law, is an e-commerce business, like Amazon, strictly liable for a defective product that was purchased on its platform from a third-party vendor, which product was *neither possessed nor owned* by the e-commerce business?") (the case recently settled, however, before the Pennsylvania Supreme Court could answer the question) (emphasis added).

Because Farm Bureau has not established that Wal-Mart.com is a seller or manufacturer under IPLA, the Court need not determine whether it can "hold jurisdiction" over Anet. *See Warriner v. DC Marshall Jeep*, 962 N.E.2d 1263, 1267 (Ind. Ct. App. 2012) ("If either condition is absent" under the domestic distributor exception test, "then [a] claim must fail as a matter of law."), *trans. denied*. The Court, accordingly, **grants** Wal-Mart.com's Motion for summary judgment on Farm Bureau's product liability claim.

B.     Counts II and III: Implied Warranty of Merchantability and Negligence

IPLA "governs all actions that are: (1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product; regardless of the substantive legal theory or theories upon which the action is brought." Ind. Code § 34-20-1-1. In addition to its product liability claim discussed above, Farm Bureau has also asserted claims for breach of an implied warranty of merchantability and under the common law of negligence, (*see* Filing No. 1).

Wal-Mart.com argues that because "IPLA governs all claims caused by an allegedly defective product whether styled as strict liability, negligence, or implied warranty claims," the Court should enter summary judgment on Farm Bureau's separate "claims for Implied Warranty of Merchantability and Negligence". (Filing No. 54 at 17.) In response, Farm Bureau argues that since "Indiana courts have held claims under the IPLA are separate and distinct from contract claims under the UCC, including the breach of the implied warranty of merchantability," it "may request relief under both the IPLA and UCC as concurrent theories of liability against Wal-Mart.com." (Filing No. 62 at 24.) In reply, Wal-Mart.com contends that Farm Bureau's general declaration failed to respond to its contention, noting that "the majority of decisions applying Indiana law have recognized the exclusivity of the IPLA remedy when a claimant tries to use common law negligence of breach of implied warranty theories to sue for personal injuries or property damage attributable to the sale or manufacture of an allegedly defective product." (Filing No. 76 at 8.) Because Farm Bureau's warranty claim is actually a tort claim "disguised as a claim for breach of implied warranty of merchantability," Wal-Mart.com maintains, "it is subsumed by the IPLA and must be dismissed." *Id.* at 9.

Wal-Mart.com is mostly right. "IPLA effectively supplants both [ ] common law negligence claims and [ ] breach of implied warranty claims" when, as here, they sound in tort.

15

*Henderson v. Freightliner, LLC*, 2005 WL 775929, at *3 (S.D. Ind. Mar. 24, 2005) (Hamilton, J.); *see Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 153 (Ind. 2005) (tort-based claims seek recovery for "personal injury or *damage to other property*.") (emphasis added). But when a claim is subsumed by IPLA, the proper action is not necessarily dismissal, but rather acknowledgement that the claims have merged. *See id.*, at *18 (denying defendants' motions for summary judgment "with the qualification that plaintiff's common law and breach of implied warranty claims are superseded by their statutory claims" under IPLA); *Cavender v. Medtronic, Inc.*, 2017 WL 1365354, at *4, *7 (N.D. Ind. Apr. 14, 2017) (holding that "common law negligence claim is subsumed and merged into [plaintiff's] cause of action under the IPLA" and "claims for breach of implied and express warranties are subsumed by the IPLA."). This caveat noted, the Court **grants** summary judgment for Wal-Mart.com on Farm Bureau's common law negligence and breach of implied warranty claims because Wal-Mart.com, as discussed above, is neither a seller nor a manufacturer under IPLA. *See Cavender*, 2017 WL 1365354, at *4 ("While it is difficult to discern any practical difference between dismissal of this claim and its merger or subsumption into the IPLA, courts in this circuit have held routinely that merging claims into a single IPLA action (whether it is based on theories of manufacturing defect, design defect, failure to warn, or a combination thereof) is preferable and more proper than outright dismissal.").

## IV. CONCLUSION

For the preceding reasons, the Court **GRANTS** Wal-Mart.com's Motion for Summary Judgment, (Filing No. 53). Because the resolution of this Motion dismisses only Wal-Mart.com as a defendant, final judgment will not issue at this time. Plaintiff Indiana Farm Bureau Insurance is directed, within 30 days, to file a Status Report regarding its intentions and status of service as

it relates to the remaining defendants. Upon resolution of the claims against the remaining defendants, the Court will issue a Rule 58 final appealable judgment.

**SO ORDERED.**

Date:  12/29/2020

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michelle A. Cobourn-Baurley
MCNEELY LAW LLP (Subrogation Department, Shelbyville)
MCobourn-Baurley@mcneelylaw.com

Cameron A. Morgan
MCNEELY LAW LLP (Subrogation Department, Shelbyville)
cmorgan@mcneelylaw.com

Kevin C. Schiferl
FROST BROWN TODD LLC (Indianapolis)
kschiferl@fbtlaw.com

Robert B. Thornburg
FROST BROWN TODD LLC (Indianapolis)
rthornburg@fbtlaw.com